**GILMAN PAPER COMPANY, Petitioner,**
v.
**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**
No. 91, Docket 26303.

United States Court of Appeals
Second Circuit.

Argued Nov. 18, 1960.

Decided Dec. 13, 1960.

Frederick Bernays Wiener, Washing-
ton, D. C. (Joseph F. Klein, Myron A.
Finke and Saul Gordon, New York City,
on the brief), for petitioner.

Kenneth E. Levin, Dept. of Justice,
Washington, D. C. (Charles K. Rice,
Asst. Atty. Gen., Lee A. Jackson and
Melva M. Graney, Dept. of Justice,
Washington, D. C., on the brief), for re-
spondent.

Before LUMBARD, Chief Judge, and
WATERMAN and MOORE, Circuit
Judges.

698

LUMBARD, Chief Judge.

The Gilman Paper Company appeals from a decision of the Tax Court upholding an asserted income tax deficiency for the calendar year 1951. In determining its income tax for that year petitioner deducted $250,000 as salary paid to its president, Charles Gilman. The Commissioner disallowed any deduction in excess of $110,000 on the ground that it was not a reasonable allowance for personal services actually rendered.

In 1940 the common stock of Gilman Paper Company was wholly owned by members of the Gilman family. Isaac Gilman (the father) held 64%; Charles Gilman (the son) held 20%; four daughters each held 4%. In that year an agreement was entered into between the corporation, Isaac Gilman and Charles Gilman. It provided that all outstanding common stock be converted to non-voting preferred, that Isaac Gilman would receive six shares of common stock and Charles Gilman four shares, with the understanding that no other voting stock was to be issued, and that upon the death of Isaac Gilman, Charles Gilman would have the option of purchasing two shares of common stock from Isaac Gilman's estate. It was further provided that upon exercising the option Charles Gilman should enter into an agreement, in part, as follows:

"That so long as he shall be employed by Gilman Paper Co. * * * that any compensation, that the said Charles Gilman shall receive for services rendered or to be rendered in excess of $30,000 per year, plus 10% of the net profits of the Gilman Paper Company in excess of $200,000 in any one year as computed for federal income taxes, shall be received by the said Charles Gilman as trustee for the benefit of all stockholders of the said Gilman Paper Co."

In October 1944, following the death of Isaac Gilman, Charles Gilman exercised his option and agreed to the terms referred to in the 1940 contract. In October 1945 the directors of the company, with Charles Gilman not voting, adopted a resolution reading:

"Resolved, that the annual salary of the President, Charles Gilman, from this Company commencing January 1st, 1945 shall be a sum equal to 10% of the net profits of this Company in excess of Two Hundred Thousand Dollars ($200,000.00) in any one year as reported by the auditors for the Company in their annual report before deduction of the amount of compensation to be paid and before provision for Federal Income Taxes."

The resolution fixing Charles Gilman's salary was followed in 1945, 1946, and 1949, but has not been adhered to in other years. In 1947, 1948, and 1950 the corporation's net income before taxes and before payment of Charles Gilman's compensation was respectively $4,384,529, $1,963,562, and $1,915,424. Yet Charles Gilman received only $100,000 in 1947 and in 1948, and $110,000 in 1950. In 1951, the year in question, when net earnings, as computed above, were $3,900,494, Charles Gilman drew only $250,000, although compensation computed according to the resolution would have amounted to some $370,049. In that same year Charles Gilman waived a $115,302 dividend on his preferred stock.

On these facts the Commissioner disallowed so much of the salary deduction as exceeded $110,000. Statutory authority for this action comes from § 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23 which allows as a deduction "ordinary and necessary expenses * * * including a reasonable allowance for salaries or other compensation for personal services actually rendered." The Regulations provide that "the test" is whether the payments "are reasonable and are in fact payments purely for services." Treas.Regs. 111, 29.23(a)–6. It is noted that an ostensible salary may, in the case of a closed corporation, actu-

ally be a dividend. Further, "any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise * * * Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid. * * * The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned."

Judge Train of the Tax Court found that the compensation agreement was entered into in 1945, that the agreement was not an arm's length transaction, and that any salary in excess of $110,000 was unreasonable and was in fact a dividend. Alternatively, the Tax Court held that the 1945 resolution had been abandoned as the measure of Charles Gilman's salary. The finding that a salary is "unreasonable" and therefore not allowable as an "ordinary and necessary" business expense is one of fact which we may not set aside unless "clearly erroneous." Both in the Tax Court and here the burden is on the petitioner. Long Island Drug Co. v. Commissioner, 2 Cir., 1940, 111 F.2d 593, certiorari denied, 1940, 311 U.S. 680, 61 S.Ct. 49, 85 L.Ed. 438.

 First we must deal with petitioner's argument that the Commissioner was precluded from proceeding on the theory that the disputed stipend was a substitute for a dividend. In support of this contention petitioner relies upon a statement made by counsel at the trial as well as upon the failure of the deficiency assessment to allege more than the unreasonableness of the salary. The statement made at the trial was in response to a question from petitioner's counsel. As we read the colloquy, counsel for the Commissioner did not abandon the theory but merely disclaimed sole reliance.[1] Nor would the Commissioner be precluded because in its deficiency assessment it failed to add that the purported salary was a dividend. We have not previously required the Commissioner to indicate his grounds with exactness. Mahler v. Commissioner, 2 Cir., 1941, 119 F.2d 869. One of the evils which § 23 guards against is the deduction as expenses of payments which should more properly be accounted for as dividends. When, as here, a salary payment was made to a majority shareholder who waived a substantial dividend in the same year, there is an adequate basis for finding it tantamount to a dividend to the extent that the salary payment was not in fact a "reasonable allowance" for "personal services actually rendered."

 Petitioner contends that the 1951 salary was paid pursuant to an arm's-length agreement, and that in any event $250,000 was a reasonable compensation. Specifically, petitioner maintains that it was the 1940 agreement, not the 1945 resolution, which obligated the corporation to follow the contingent compensation agreement. We disagree. The 1940 agreement appears to us, as it did to the Tax Court, to have been directed to protecting the minority shareholders by establishing a ceiling on any future compensation Charles Gilman might receive. It was the 1945 resolution which set the salary. At this time Charles Gilman was majority stockholder, president and chairman of the board and "had control of the corporation" by his own admission. In addition to these facts and those previously set forth we know only

---

1. "[Counsel for Petitioner]: Is it in order, your Honor, for me to ask counsel whether we are narrowing the issue down to this, then, because the dividend was refused, Respondent contests the salary?

"[Counsel for Commissioner]: No, that is not correct, your Honor."

that Charles Gilman called a directors' meeting for the purpose of considering his salary and that the directors who voted on this resolution were Charles Gilman's brother-in-law and Isaac Gilman's executor, neither of whom were called to testify before the Tax Court. In the absence of testimony regarding negotiations, there is surely some basis for the conclusion that the resolution was motivated by considerations other than the desire to secure Charles Gilman's services for a fair price. Furthermore, the resolution itself provided that "This compensation shall be in full force and effect until further order of this board." The unexplained failure of the board to redetermine the compensation, especially after 1947 when Charles Gilman had been entitled to some $408,000 but had shown his willingness to toil for $100,000 lends support to the conclusion of the Tax Court that the dealings were not at arm's-length. Finally, we agree with the Tax Court that the parties no longer considered the resolution as the measure of Charles Gilman's salary; salary had been computed in accordance with its terms in only three years since its passage in 1945.

It remains only to examine the Tax Court's finding that any salary in excess of $110,000 was unreasonable. Taxpayer put in evidence the growth of the Gilman Paper Company and of Charles Gilman's contribution thereto. It is undisputed that the Gilman Paper Company had shown outstanding growth. However, we do not know how this growth compared with that of the industry in general. Nor was the importance to the Gilman Paper Company of its chief executive's services a matter upon which conflicting inferences could not be drawn. Judge Train of the Tax Court, who had full opportunity to view Charles Gilman on the witness stand and to assess his capabilities, found that his contribution was unimpressive. On such a record we can see no basis to conclude that the findings of the Tax Court were clearly erroneous.

Affirmed.