Quarrier Diner, Inc. v. Commissioner. Hurt Realty Company v. Commissioner. O. M. Young and Thelma Young v. Commissioner.
Quarrier Diner, Inc. v. Commissioner
Docket Nos. 90239, 90241, 90242.
United States Tax Court
T.C. Memo 1963-69; 1963 Tax Ct. Memo LEXIS 275; 22 T.C.M. (CCH) 276; T.C.M. (RIA) 63069; March 8, 1963
*275 J. B. Fisher, Esq., 809 Kanawha Valley Bldg., Charleston, W. Va., for the petitioners. John J. Larkin, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined the following deficiencies in income tax and additions to tax under section 6653(a) of the Internal Revenue Code of 1954 for negligence or intentional disregard of rules and regulations: Addition
Petitioner
Year
Deficiency
to Tax
Quarrier Diner, Inc.
1957
$10,457.24
$522.86
1958
5,436.90
271.85
1959
5,305.27
265.26
Hurt Realty Company
1957
744.86
1958
1,023.80
1959
1,660.94
O. M. Young and
Thelma Young
1957
$ 9,495.65
$474.78
1958
5,178.13
258.90
1959
4,554.82
227.74
In the case of Quarrier Diner, Inc., Docket No. 90239, the issues are (1) what amounts are reasonable allowances as deductions for salaries paid to the two sons of the principal stockholder; (2) whether an amount paid for an interest in a camp site in 1959 and claimed as advertising expense is allowable as a deduction; and (3) whether the additions to tax are erroneous. In the case of O. M. *276 Young and Thelma Young, Docket No. 90242, the issues are whether certain of the amounts disallowed to Quarrier as salaires should be taxed to the principal shareholder as dividend income, and whether the additions to tax are erroneous. In the case of Hurt Realty Company, Docket No. 90241, the respondent, on brief, concedes the sole contested determination, and there is no remaining issue. The deficiencies in such case will be recomputed under Rule 50. Findings of Fact O. M. Young and Thelma Young are husband and wife, residing in Charleston, West Virginia. They filed joint Federal income tax returns for the calendar years 1957, 1958, and 1959. Quarrier Diner, Inc., herein referred to as Quarrier, is a West Virginia corporation having its principal place of business in Charleston, West Virginia. It filed corporation income tax returns for the calendar years 1957, 1958, and 1959. The returns of all the petitioners were filed with the district director of internal revenue at Parkersburg, West Virginia. In the taxable years the stock of Quarrier was owned 833 shares by O. M. Young (herein sometimes referred to as Young), 417 shares by his brother Roma H. Young (herein referred *277 to as Roma), and 1 share by Charles L. Young (herein referred to as Charles), a son of O. M. Young. Edward H. Young (herein referred to as Edward) was a son of O. M. Young and was employed in Quarrier's business. Quarrier operated a restaurant in Charleston. The restaurant had a seating capacity of about 300 and employed about 50 to 60 employees. In 1958 and 1959 Quarrier also operated a food concession at the Elks Club across the street from its premises. O. M. Young was in the restaurant business for more than 30 years prior to 1957. He was president and general manager of Quarrier, worked in that corporation's business supervising all employees, devoted most of his time to it from 11:00 A.M. to 9:00 P.M. seven days per week, and met daily with his brother Roma concerning the operations and plans for the day. He read various publications relating to the restaurant business and was a member of several trade associations in the restaurant field. He was also the controlling stockholder and an officer of Hurt Realty Company which owned a building rented to a telephone company. His duties with Hurt Realty were to oversee the maintenance of the building and inspect its condition. *278 In 1959 Hurt Realty prepared to operate a restaurant in Huntington, West Virginia, which was opened in February 1960. The preparation required frequent trips to Huntington over a period of four months and planning, designing, and carrying out the interior decorating on the part of Young and his son Edward. Young received $500 monthly from Quarrier, charged on its books to salaries and wages not deducted elsewhere, and additional amounts charged as officers' salaries from both Quarrier and Hurt Realty. The following schedule shows these amounts, the taxable income reported on the returns of O. M. Young and Thelma Young, and the amounts of their taxable income as determined by the respondent. This includes as income amounts paid by Quarrier to Charles and Edward and charged as officers' salaries and by them paid over to Young to apply on the purchase price of stock in Quarrier and Hurt Realty which Charles and Edward understood their father would at some future time transfer to them. 1957
1958
1959
Quarrier monthly payments
$ 6,000
$ 6,000
$ 6,000
Quarrier - officer's salary
13,600
10,000
6,500
Hurt - officer's salary
5,000
5,930
5,000
Total
$24,600
$21,930
$17,500
Taxable income: Per return
$16,025.66
$13,729.92
$11,899.92
As determined by respondent
40,075.66
29,304.92
26,535.39
*279 Roma H. Young was a director of Quarrier and met with O. M. Young every day to plan the operations. He devoted only a part of his time to the business of Quarrier. He received amounts charged as officers' salaries of $7,000, $4,000, and $1,000 from Quarrier for 1957, 1958, and 1959, respectively. Reasonable salaries for his services to Quarrier in these years were $1,200, $1,200, and $1,000, respectively. Charles worked for Quarrier since 1946. He was a high school graduate, took some night courses at a college in Charleston, and attended some seminars at the University of Chicago on restaurant management and selection of meats. He devoted full time to Quarrier in 1957, 1958, and 1959, working six and one-half days per week. He had no experience in any other business. Edward worked for Quarrier since 1946. He was a high school graduate and attended business school but not college. He devoted full time to Quarrier in 1957, 1958, and 1959, working six and one-half days per week. He had no experience in other business. In 1958 Quarrier took over the food concession at the Elks Club dining room across the street, and Edward was in charge of the operation of getting the food supplied *280 from Quarrier and lining up the help. This continued until the fall of 1959. In late 1959 Hurt Realty undertook to open a restaurant in Huntington, and Edward was associated with his father in planning it and making frequent trips to Huntington to prepare this restaurant, and he became manager of it when it was opened in February 1960. Charles and Edward each received $400 per month from Quarrier in 1957, 1958, and 1959. These were charged on the books to salaries and wages not deducted elsewhere. In addition to such amounts, they received the following amounts charged on the books as officers' salaries: Year
Charles
Edward
1957
$16,200
$17,500
1958
8,000
12,500
1959
10,000
6,000 Of these amounts the following amounts, in addition to the $400 per month mentioned above, were reasonable allowances for salaries for their services as employees of Quarrier: Year
Charles
Edward
1957
$4,500
$5,100
1958
2,500
2,375
1959
3,500
None
The following amounts, which were paid by Quarrier to Charles and Edward and charged as officers' salaries, and which by them were paid over to O. M. Young and Thelma Young, constituted dividend income *281 to O. M. Young and Thelma Young: Year
Charles
Edward
1957
$11,700
$12,400
1958
5,500
10,125
1959
6,500
6,000
In 1959 Quarrier paid $500 for an interest in a camp site which was to be used one day each year for an outing for all employees and their families. Quarrier claimed a deduction of this amount as advertising and promotion expense in its return for 1959. Quarrier's income tax returns showed the following: 1957
1958
1959
Gross income
$355,408
$362,274
$415,156
Cost of sales
150,664
161,674
182,822
Gross profit
$204,744
$200,600
$232,334
Deductions claimed
208,874
198,440
231,552
Net profit reported
(- 4,130)
2,160
782
Salaries and wages not
deducted elsewhere
$101,199
$108,977
$130,676
Deduction claimed for of-
ficers' salaries
61,188
44,219
39,538
At least a part of each underpayment of income tax in the cases of O. M. Young and Thelma Young and of Quarrier was due to negligence or intentional disregard of rules and regulations. Opinion The principal issue relates to the deductions claimed on Quarrier's returns as compensation for services of Charles and Edward. The respondent has *282 conceded on brief that all the salaries paid O. M. Young and claimed on Quarrier's returns as deductions are allowable. Petitioners on brief concede that respondent correctly determined the amounts allowable as salary to Roma. The disallowances relate to so-called "officers' salaries" paid to Charles and Edward, which amounted to $33,700, $20,500, and $16,000 for the years 1957, 1958, and 1959, respectively, of which respondent disallowed $24,100, $15,625, and $12,500, respectively. These salaries were in addition to amounts of $400 per month drawn by each of these employees and charged as business expenses other than officers' salaries. The corporation was closely held and distributed no dividends, as such, in the taxable years or earlier. The respondent contends that part of the "officers' salaries" paid to Charles and Edward, which amounts were then paid over to Young, purportedly for his promise to transfer shares of stock in Quarrier and Hurt Realty to Charles and Edward at some undisclosed future time, were in effect distributions of dividends from the corporation to its principal stockholder. Next, the respondent contends that such distributions were gifts and hence not deductible; *283 and thirdly, that the amounts were unreasonable as being excessive for the services performed. The petitioners contend that the salaries were reasonable in amount, considering the quality, nature, and extent of the services performed, the training of these employees, and the earnings of the corporation. They argue that if six percent on the book value of the capital investment is allowable as a reasonable return to the stockholders, the remainder should be considered available as reasonable management salaries. They present a computation on this basis, arriving at figures for management salaries of $45,377, $34,643, and $28,576 for 1957, 1958, and 1959, respectively. From this they argue that salaries of $16,750, $11,700 and $10,500 each to Charles and Edward in these respective years would be reasonable. There are several shortcomings in the petitioners' argument. For one, they ignore the fact that Charles and Edward received $400 per month each in addition to these amounts charged as officers' salaries. Next, the argument assumes that the services of each of these sons were worth more than the services of their father who had the full responsibility as manager of the entire operation, *284 and had more than 30 years experience in the business. The father received from Quarrier $19,600, $16,000, and $12,500 in these years; the sons, on the basis suggested, would each receive $16,750 plus $4,800, or $21,550 for 1957, and a total of $16,500 for 1958 and $15,300 for 1959. The evidence does not support the conclusion that the services of either son were worth more than their father's services. Furthermore, there was no distribution of a dividend, as such, or a retention of surplus earnings for the benefit of the stockholders, and Young admitted in his testimony that the surplus earnings were all distributed but not declared as dividends, there being nobody interested except his brother and his two sons. The distributions were calculated near the end of the year when the profits which would be available could be estimated, and when they were distributed the amounts of taxable income remaining were negligible. The evidence concerning the experience and abilities of Charles and Edward does not support the allowance of such salaries as were distributed. The petitioners have not shown error in the respondent's determination as to the amount of these salaries allowable as deductions *285 to Quarrier, and we sustain that determination. Quarrier paid $500 in 1959 for an interest in a camp site which it used for a one-day outing for all its employees and intended to use once a year thereafter for a similar purpose. Quarrier charged this payment to advertising and promotion expense. The respondent disallowed the deduction. There is no persuasive evidence that this was not a capital item rather than a business expense. The petitioners on brief make no argument on this point, and we find no error in the respondent's determination. In the case of O. M. Young and Thelma Young, the respondent determined that the amounts held to be excessive salaries paid by Quarrier to Charles and Edward constituted dividend income from Quarrier to O. M. Young. These amounts were derived from earnings of Quarrier and were paid over to these petitioners by Charles and Edward. The petitioners argue that the payments were received by them on the purchase price of stock in Quarrier and Hurt Realty which Young promised to give his sons. There was no written agreement and no evidence that any enforceable rights to stock were acquired by these payments. The substance of what happened is that *286 the surplus earnings found their way into the possession and control of the principal stockholder as would a dividend. The other large stockholder, Roma, received a share of the surplus earnings in the form of salaries now conceded to be excessive. It is not essential that the distribution be pro rata to constitute a dividend. We sustain the respondent's determination that these distributions constituted dividend income to these petitioners. See Louisville Chair Company v. United States, 296 F. 2d 621 (C.A. 6, 1961); Gilman Paper Company v. Commissioner 284 F. 2d 697 (C.A. 2, 1960), affirming a Memorandum Opinion of this Court. Additions to tax were determined under the provisions of section 6653(a). [1] This provision authorizes an addition to the tax of 5 percent if any part of an underpayment is due to negligence or to intentional disregard of rules and regulations. The petitioners offered no evidence to show error in this determination. The testimony of O. M. Young to the effect that the surplus earnings were distributed within the family, but not as formal dividends, tends to support the respondent's determination in this particular. *287 Decisions will be entered under Rule 50. Footnotes
1. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩